**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON**

**CIVIL ACTION NO. 05-34-DLB**

**AMY MILLER**                                                                  **PLAINTIFF**

vs.                       **<u>MEMORANDUM OPINION & ORDER</u>**

**SOLA INTERNATIONAL, INC.**                                    **DEFENDANT**

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

Plaintiff brought this action against Defendant, her former employer, alleging violations of the Consolidated Omnibus Budget Reconciliation Act (COBRA) and Family and Medical Leave Act (FMLA); gender discrimination in violation of the Kentucky Civil Rights Act (KCRA); unlawful retaliation; and intentional infliction of emotional distress, after she was terminated for "performance issues."

This matter is presently before the Court upon Defendant's Motion for Summary Judgment (Doc. #13). Plaintiff filed a response (Doc. #16), to which Defendant replied (Doc. #18). The motion is now ripe for review.

**I. FACTUAL BACKGROUND & PROCEDURAL HISTORY**

Plaintiff Amy Miller began working for Defendant Sola International, a Delaware corporation with its principal place of business in California, as an order entry clerk on December 10, 2002. Plaintiff was employed at Defendant's Hebron, Kentucky facility. In May 2003, she was diagnosed with, and underwent surgery for, breast cancer.[1] Defendant

---

[1] Plaintiff had a lumpectomy.

1

allowed Plaintiff to take ninety days of medical leave, commencing May 19, 2003. Plaintiff's post-operative treatment included chemotherapy and radiation; therefore, she requested and was granted an additional ninety days of leave. The maximum amount of leave provided under Defendant's policy was six months.[2] When she was unable to return to work after exhausting her leave, she was terminated on November 24, 2003.

Plaintiff was released by her doctors to return to work in January 2004. It is undisputed that she was rehired by Defendant at that time.[3] Almost immediately, however, Plaintiff's performance began to suffer. She was absent on January 20, missed four hours of work on February 25, was absent on May 12, 13, and 25; and was tardy on March 15, April 1 and 21, and May 6. As a result of these incidents, Plaintiff received a verbal warning on June 3, 2004. When she was tardy again the following day, she received a written warning on June 10. Plaintiff was absent on June 15 and 16, and she received a final warning on June 21. After failing to report to work on July 7, she received counseling by Mike Browning, Director of Lab Operations, on July 20. Plaintiff was finally terminated on September 8, 2004, after she was a "no call-no show" for her shifts on September 2, 3, 7, and 8.

In her five-count complaint, Plaintiff claims that, with respect to her September 8, 2004 termination: 1) Defendant failed to provide notice of her right to continued health coverage under COBRA, 2) Defendant unlawfully discriminated against her based upon her

---

[2]Under Defendant's policy, an employee was eligible for personal/family leave once he/she had been employed for one year. It is undisputed that at the time she took her leave in May 2003, Plaintiff had only worked for Defendant for approximately five months.

[3]Plaintiff claims that Defendant's Human Resources Director, Lori Wilson, called her and asked if she was interested in returning to work. During her deposition, however, Wilson indicated that Plaintiff initiated the call. (Wilson depo, p.9).

gender because she was recovering from, and receiving treatment for, breast cancer, 3) Defendant interfered with the exercise of her FMLA rights, 4) her termination constituted unlawful retaliation, and 5) Defendant's conduct was extreme and outrageous, sufficient to support a claim for intentional infliction of emotional distress (IIED).

On January 31, 2006, Defendant moved for summary judgment on all claims. In support, Defendant argues that: 1) Plaintiff received written notice of her right to continued coverage under COBRA, but elected not to exercise that right due to financial constraints, 2) Plaintiff cannot establish a prima facie case of gender discrimination because she has failed to identify a similarly-situated male who was treated differently, and assuming she could, it has identified a legitimate, non-discriminatory reason for terminating her (i.e., violation of its attendance policy), 3) Plaintiff cannot state a claim under the FMLA for retaliation or interference because she was not an eligible employee, and even is she was, she did not request leave or otherwise invoke the protections of the FMLA before she was terminated, 4) Plaintiff did not engage in any "protected activity" and, therefore, cannot state a claim for retaliation, and 5) Plaintiff has failed to demonstrate that its conduct was sufficiently extreme or outrageous to support a claim for IIED.

In response, Plaintiff concedes the merits of her COBRA claim. With respect to her FMLA claim, Plaintiff argues that Defendant was aware that at least four of her absences were medical-related, and her termination was designed to "prohibit [her] FMLA rights from accruing in January ... 2005." (Doc. #16, p.8). Plaintiff also claims that "there is a clear controversy on the issue of whether [she] was legally fired, or whether [D]efendant's proferred [sic] excuse was a subterfuge for ... gender discrimination based upon [her] status as a woman recovering from breast cancer ...." (*Id*.). Finally, Plaintiff argues that,

3

if true, her allegations prove that "[D]efendant's actions deviated from all reasonable bounds of decency ...." (*Id.*). Conspicuously missing from Plaintiff's response is any argument - legal or factual - in support of her retaliation claim.

## II. ANALYSIS

### A.   Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986). Once the movant has met this initial burden, the non-movant cannot rest on its pleadings, but must show that there is a genuine issue for trial. *Id.* at 324. All evidence and inferences based on evidence must be considered in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co. v. Zenith Radio* Corp., 475 U.S. 574, 587 (1986). However, "[t]he trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1427, 1479-80 (6th Cir. 1989).

### B.   Discussion

#### 1.   COBRA, Retaliation, and IIED claims

Because these claims can be resolved in relatively short order, the Court addresses them at the outset. First, as noted above, Plaintiff concedes the merits of her COBRA claim; therefore, summary judgment will be **GRANTED** as to Count 1 of Plaintiff's complaint.

Second, Plaintiff has failed to present a legal or factual basis for her retaliation claim. Specifically, she has failed to present any evidence that would support such a claim, under either the FMLA or KCRA. A prima facie case of retaliation under the FMLA requires showing that: (1) the plaintiff employee availed herself of protected right under FMLA by notifying employer of her intent to take leave; (2) she suffered adverse employment action; and (3) there was causal connection between exercise of her rights under FMLA and adverse action. *See Edgar v. JAC Products, Inc.*, 443 F.3d 501, 507 (6th Cir. 2006). In this case, it is unclear whether Plaintiff invoked her FMLA rights before she was terminated on September 8, 2004.[4] However, even assuming she did, she has not established a causal connection between her conduct and Defendant's decision to terminate her.[5]

Similarly, a claim for unlawful retaliation under the KCRA requires the plaintiff to first establish prima facie case of retaliation, which consists of showing that: (1) she engaged in a protected activity, (2) she was disadvantaged by an act of her employer, and (3) there was a causal connection between the activity engaged in and the [defendant] employer's act. *Kentucky Dept. of Corrections v. McCullough*, 123 S.W.3d 130, 133-34 (Ky. 2003).

---

[4] In late August/early September 2004, Plaintiff began experiencing cancer-related fatigue. She initially saw her family physician, Dr. Sanders, who referred her to her radiologist, Dr. Cross. During her deposition, she testified that: 1) she provided Defendant a note from her Dr. Sanders indicating that she was under his care on August 27 and would be able to return to work on August 30, 2) she called Jody Jenne, her supervisor, and told her that she would not be in for her shifts on September 2, 3, 7, and 8 because she was going to see Dr. Cross for an evaluation, and 3) Dr. Cross called Jody and explained the same, *all before September 8, 2004*. (Plf's depo, pp. 74-75, 93-95). Defendant, by contrast, argues that Plaintiff never requested medical leave, and did not provide any documentation regarding her absences on August, 27, 30 and September 2, 3, 7, and 8 until September 27, 2004, nearly three weeks after she was terminated.

[5] Also, as will be discussed below, Plaintiff is not an "eligible employee" under the FMLA. The Sixth Circuit has held that this requirement applies in all FMLA cases, including retaliation cases. *See Hummeny v. Genex Corp.*, 390 F.3d 901, 905-06 (6th Cir. 2004). This provides another basis for concluding that Plaintiff cannot maintain a claim for FMLA retaliation.

Opposing a practice by an employer that is unlawful under the KCRA constitutes a "protected activity." *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 578 (6th Cir. 2000). There is no evidence in this case that Plaintiff engaged in such activity. Therefore, summary judgment will be **GRANTED** as to Count 4 of Plaintiff's complaint.

Finally, Plaintiff's IIED claim rests on the merits of her FMLA and gender discrimination claims.[6] As will be discussed below, Plaintiff has failed to establish the existence of a genuine issue of material fact on either of those claims; therefore, summary judgment will be **GRANTED** as to Counts 2, 3, and 5 of Plaintiff's complaint as well.

### 2. FMLA claim

Plaintiff's FMLA claim is two-fold. First, she alleges that termination violated the FMLA because at least four of her absences were for medical reasons and were, therefore, FMLA-qualifying. Second, she alleges that Defendant terminated her in September 2004 to prevent her FMLA rights from vesting in January 2005. The Court will address each allegation in turn.

The FMLA entitles a qualifying employee up to twelve weeks of unpaid leave if she has a serious health condition that renders her unable to perform the functions of her position. *See Cavin v. Honda of Am. Mfg., Inc.*, 346 F.3d 713, 719 (6th Cir. 2003); 29 U.S.C. § 2612(a)(1)(D). It also prohibits an employer from interfering with, restraining, or denying the exercise of any right provided under the Act. *See* 29 U.S.C. § 2615(a)(1). To

---

[6]To establish IIED, Plaintiff must prove four elements: (1) Defendant's conduct was intentional or reckless; (2) the conduct was outrageous and intolerable, such that it offends generally accepted standards of decency and morality; (3) there must be a causal connection between Defendant's and her emotional distress; and (4) the emotional distress must be severe. *Kroger Co. v. Willgruber*, 920 S.W.2d 61, 65 (Ky. 1996). In this case, Plaintiff's proof consists of nothing more than conclusory allegations.

prevail on an entitlement/interference claim, a plaintiff must show that: (1) she is an eligible employee, (2) the defendant is an employer as defined under the Act, (3) she was entitled to leave under the FMLA, (4) she gave the employer notice of her intention to take foreseeable leave, and (5) the employer denied her FMLA benefits to which she was entitled. *Cavin*, 346 F.3d at 719.

In this case, Defendant contends that Plaintiff cannot establish the first element, i.e., that she is an "eligible employee." An eligible employee is defined under the Act as an employee who has been employed for at least twelve months by the employer, and for at least 1250 hours during the twelve-month period. 29 U.S.C. § 2611(2)(A). The definition, therefore, has both a durational and hours-of-service component. The facts in this case reveal that, when she was terminated on September 8, 2004, Plaintiff had only been employed by Defendant for approximately nine months. Therefore, she does not qualify as an "eligible employee" under the FMLA. Perhaps recognizing as much, Plaintiff failed to even address this element - or the other elements of her prima facie case - in her response to Defendant's motion.[7]

Plaintiff also argues that her discharge was a "manipulative charade cogitated to prohibit [her] FMLA rights from accruing in January of 2005." (Doc. #16, p.8).[8] A fellow district court recently considered and rejected a similar argument. In *Kolarik v. Alterra Healthcare Corp.*, No. 04-1388, 2005 WL 1842752, at *3 (D. Kan. July 29, 2005), the

---

[7]Having concluded that Plaintiff is not an "eligible employee" under the Act, the Court need not address whether she gave Defendant adequate notice of her intent to take leave before she was terminated on September 8, 2004. *See infra* note 4.

[8]Plaintiff raises this argument, without further elaboration, in the concluding paragraph of her response.

plaintiff argued that the defendant terminated her in order to prevent her from receiving the rights guaranteed by the FMLA. *Id*. In support, she relied on § 2615(a)(1), which makes it unlawful for an employer to interfere with or deny the exercise of any right provided under the Act. *Id*. The district court rejected this argument, noting that "the right to leave under the FMLA is only provided to 'eligible employees,' which [the plaintiff] is not." *Id*. The Court finds the *Kolarik* decision persuasive, and given the identity of facts in this case, reaches the same result.

For these reasons, the Court concludes that Plaintiff is unable to state a claim under the FMLA.

### 3. KCRA claim

Finally, Plaintiff alleges that she was unlawfully discriminated against based upon her gender, in violation of the Kentucky Civil Rights Act. *See* K.R.S. § 344.010 *et seq.* In support, she claims that she was terminated because she was receiving treatment for breast cancer. Defendant, by contrast, argues that Plaintiff cannot establish a prima facie case of discrimination because she has failed to identify "any similarly situated males who were treated differently or better than she was for the same number of attendance incidents." (Doc. #13, p.5). Alternatively, Defendant contends that, assuming that Plaintiff could establish a prima facie case of discrimination, it has articulated a legitimate, non-discriminatory reason for her discharge, i.e., violation of its written attendance policy. Finally, Defendant argues that Plaintiff's claim that it harbored any type of discriminatory animus against her based upon her condition, or the treatment it required, is undermined by the fact that it rehired her in January 2004.

Consistent with her other claims, Plaintiff has failed to present any evidence that her

gender was a motivating factor in Defendant's decision to terminate her. Absent such evidence, the Court concludes that Plaintiff's claim of gender discrimination is without merit.

### III.  CONCLUSION

In accordance with the above,

**IT IS ORDERED** that:

(1)    Defendant's Motion for Summary Judgment (Doc. #13) be, and hereby is, **GRANTED**,

(2)    Plaintiff's claims be, and hereby are, **DISMISSED WITH PREJUDICE**, and

(3)    This case is stricken from the active docket of the Court.

A Judgment consistent with this Memorandum Opinion and Order is entered contemporaneously herewith.

This 19th day of June, 2006.



Signed By:
David L. Bunning
United States District Judge

G:\DATA\Opinions\2-05-34-MillerMSJ.wpd

9